UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-23406-GAYLES

IKRAM UL HAQ KHAN,
                    Plaintiff,

          v.

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, et al.,
                    Defendants.
_____/

ORDER

**THIS CAUSE** comes before the Court on the Motion to Dismiss in Part [ECF No. 21] filed by Defendants United States Citizenship and Immigration Services ("USCIS"); the U.S. Department of Homeland Security; Roketa Mansfield, Acting Director of USCIS's Miami Field Office; Linda Swacina, Director of USCIS's Miami District Office; Leon Rodriguez, the Director of USCIS; and Jeh Johnson, Secretary of the Department of Homeland Security.[1] The Court has carefully considered the Amended Complaint, the arguments and briefs of counsel, and the applicable law, and is otherwise fully advised in the premises. At the hearing on the motion held on September 30, 2016, the Court granted the Defendants' motion and dismissed Counts II-VII of the Amended Complaint "pursuant to this Court's forthcoming written order." [ECF No. 50]. This Order follows.

I.     **BACKGROUND**

       A.     *Factual Allegations*

       Plaintiff Ikram Ul Haq Khan is a native and citizen of Pakistan and a lawful permanent resident of the United States. Am. Compl. ¶ 1. In 2006, Khan submitted an application to become

---

[1] Although the Defendants have not filed a substitution to this effect, the Court notes that John F. Kelly has held the position of Secretary of the Department of Homeland Security since January 20, 2017.

a naturalized citizen, but USCIS did not move forward with the adjudication of his application. *Id.* Khan filed a mandamus action in this District in 2013 seeking to compel USCIS to issue a decision on his application, after which USCIS interviewed Khan and denied his application. *Id.* In this action, Khan alleges that his application was not processed under USCIS's normal adjudicatory procedures, but rather "under a parallel, extra-legal adjudication track called the 'Controlled Application Review and Resolution Program'" ("CARRP"). *Id.* ¶ 2. According to Khan, this program prohibits USCIS field officers from approving applications for certain immigration benefits (including naturalization) where the application is deemed to pose a "national security concern," but rather directs them to delay adjudication of or deny applications selected for CARRP processing. *Id.* ¶ 3.

### 1.     CARRP

To become a U.S. citizen through naturalization, an applicant must satisfy several prerequisites established by the Immigration and Nationality Act ("INA"), 8 U.S.C. § 101 *et seq.* These include that he must have continuously resided in the United States for a period of five years and have been physically present in the United States for at least half of that time, and that he must have been "a person of good moral character" for the five-year period before the filing of his naturalization petition. 8 U.S.C. § 1427. If an applicant satisfies the statutory requirements for naturalization, USCIS "shall grant the application." 8 C.F.R. § 335.3(a). If USCIS's final decision is to deny naturalization, the applicant may seek *de novo* review of the denial in the U.S. district court with jurisdiction over the applicant's place of residence. 8 U.S.C. § 1421(c). In such a proceeding, the district court "shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." *Id.*

Khan alleges that in April 2008, USCIS created CARRP, under which USCIS officers screen applications for "national security concerns," and an applicant is considered to pose such

a concern if it is determined that he has an "articulable link to prior, current, or planned involvement in, or association with, an activity, individual or organization" that has engaged in terrorist activity or been a member of a terrorist organization. *Id.* ¶¶ 19-20, 22. If an application is selected for processing under CARRP, USCIS removes the application from the agency's routine adjudication track and places it on a separate CARRP track. *Id.* ¶ 20. Khan contends that CARRP applications "are subject to an entirely distinct set of adjudicatory procedures that lack any authority or foundation in statute or regulation." *Id.* ¶ 21.

Khan asserts that at each step in the processing of a CARRP application, adjudication is steered towards either delay or denial. *Id.* ¶ 27. In the initial stages of CARRP adjudication, USCIS officers are instructed to perform an "eligibility assessment" to determine whether the applicant qualifies for the benefit, but these such assessments "often lead to the pretextual denials that lack a legitimate basis in fact and law and would not have been issued had the application been reviewed without the eye toward denial CARRP demands." *Id.* ¶ 28. According to Khan, through CARRP, USCIS cedes control over the adjudication of naturalization applications to other federal agencies that lack authority over immigration matters. *Id.* ¶ 29. USCIS often denies CARRP applications because law enforcement agencies outside the Department of Homeland Security request such a decision. *Id.* ¶ 30. CARRP applications are delayed when USCIS cannot find a reason to deny the application, but when an applicant files a mandamus action, "USCIS field officers will deny a statutorily-eligible applicant because CARRP prevents such officers from issuing an approval." *Id.* ¶ 31.

### 2.    Khan's Naturalization Application

Khan was admitted to the United States in a lawful permanent resident status as the unmarried son of a United States citizen on June 26, 2001. *Id.* ¶ 34. On June 19, 2006, Khan filed an application for naturalization with USCIS and was subsequently scheduled for a naturalization

interview. *Id.* ¶ 35. On June 27, 2008, after CARRP was created, USCIS issued a notice advising Khan that "due to unforeseen circumstances" it would have to cancel the interview. *Id.* ¶ 36.

In April 2013, after waiting almost five years for an interview to be rescheduled, Khan filed a mandamus action seeking to compel USCIS to schedule a naturalization interview, conduct the interview, and issue a decision on his case. *Id.* ¶ 37; *see also Khan v. USCIS*, No. 13-21351 (S.D. Fla. *filed* Apr. 18, 2013). After Khan filed the action, USCIS scheduled Khan for two interviews (both of which he attended)—on July 18 and October 24, 2013. *Id.* ¶ 38.

In letters dated July 9 and September 5, 2013, Khan's counsel requested in writing that USCIS inform him "whether Mr. Khan's application for naturalization has been, is, or will be subject to [CARRP]." *Id.* ¶ 39. Khan's counsel further requested that if Khan's application "has been, is, or will be subject to CARRP," that "USCIS provide [counsel] with any and all information and/or evidence that the USCIS (or any other U.S. government agency, department and/or entity) considered and/or utilized to determine that his application should (or will be) designated for CARRP." *Id.* USCIS denied the July 9th request by letter on July 12, 2013. *Id.* ¶ 40.

Despite this denial, a document later obtained through a FOIA request identifies the "Interviewing Officer" at Khan's July 18, 2013 interview as "Ahmed Ztaoui, MIA <u>CARRP</u>." *Id.* ¶ 41. Additionally, a "General Inquiry" printout dated and produced as part of a FOIA request lists the "Location" of Khan's alien file as of January 2010 as "FDNS-NS De-Con/Internal/Entern." *Id.* "FDNS" is an abbreviation for USCIS's "Fraud Detection and National Security" directorate, which is the division responsible for CARRP. *Id.* Khan believes that "De-Con" is an abbreviation for "de-confliction," terminology that is exclusive to CARRP that refers to certain CARRP adjudication procedures. *Id.*

On November 26, 2013, USCIS denied Khan's initial N-400 naturalization application on two grounds. *Id.* ¶ 42. First, USCIS concluded that Khan failed to establish continuous residence

for the five-year period before filing for naturalization. *Id.* Second, it concluded that Khan failed to establish good moral character. *Id.* On this ground, it relied on "First Information Reports" purportedly issued by a Pakistani government office and two articles published by a Pakistani newspaper to conclude that Khan "committed unlawful acts that adversely reflect on [his] moral character," because he was a member of the local Taliban. *Id.* USCIS also concluded that Khan provided false testimony under oath with the intention of gaining an immigration benefit. *Id.*

On December 18, 2013, Khan filed an administrative appeal of the denial, pursuant to 8 U.S.C. § 1447. *Id.* ¶ 43. He appeared for an interview on June 30, 2014. *Id.* On May 13, 2015, USCIS issued a final denial, reaffirming the denial of citizenship on the same grounds outlined in the original application. *Id.* ¶ 44.

**B.    *Procedural History***

Khan filed an action in this Court on September 9, 2015, and amended his Complaint on February 8, 2016. He principally requests a *de novo* hearing pursuant to 8 U.S.C. § 1421(c) (Count I of the Amended Complaint), as he contends that he meets all the statutory requirements for naturalization and that he has exhausted all administrative remedies. Khan requests that this Court conduct a plenary *de novo* hearing on his naturalization application and grant his application following such a hearing. The Defendants have answered this Count [ECF No. 59].

Khan also alleges six other claims against the Defendants, seeking declaratory or injunctive relief: violation of the Immigration and Nationality Act (Count II); violation of the Constitution's "uniform Rule of Naturalization" (Count III); judicial review of USCIS's decision pursuant to the Administrative Procedure Act (Count IV); violation of the Fifth Amendment's guarantee of pro-cedural due process (Count V); estoppel (Count VI); and violation of the Administrative Procedure Act's notice-and-comment requirement because the Defendants failed to provide public notice of CARRP or provide opportunity for public comment (Count VII). Through the instant motion, the

Defendants seek to dismiss these claims, arguing that Khan does not have standing to assert them and, in the alternative, that he has failed to state claims for which relief can be granted. The Court held a hearing on the motion on September 30, 2016, at which it dismissed Counts II through VII.

## II.    LEGAL STANDARDS

"The Constitution confers limited authority on the judicial branch. It endows the federal courts with '[t]he judicial Power of the United States,' and limits that power to the resolution of 'Cases' and 'Controversies.' . . . . Article III restricts the jurisdiction of the federal courts to litigants who have standing to sue." *Nicklaw v. Citimortgage, Inc.*, 839 F.3d 998, 1001 (11th Cir. 2016) (quoting U.S. Const. art. III §§ 1-2). "[T]he doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990). The party invoking federal jurisdiction bears the burden of demonstrating that he has standing to sue. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). The "irreducible constitutional minimum of standing" requires an "injury in fact" that is both "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted). The party invoking federal jurisdiction must also demonstrate "a causal connection between the injury and the conduct complained of," and "a likelihood that a court ruling in [his] favor would remedy [his] injury." *Id.* As standing is a threshold determinant, he must "clearly . . . allege facts demonstrating" standing. *Warth v. Seldin*, 422 U.S. 490, 518 (1975).

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709-10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff, *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

## III.   DISCUSSION

The Defendants argue, *inter alia*, that Khan lacks standing to bring Counts II through VII. Khan seeks declaratory and injunctive relief through these counts, which his counsel asserts are "ultimately procedural challenges" or "a challenge to what CARRP is within" the naturalization application process. Hr'g Tr. [ECF No. 56] at 19:2-5. While the allegation of a deprivation of citizenship can suffice in certain circumstances as an injury-in-fact, *see Breyer v. Meissner*, 214 F.3d 416, 423 (3d Cir. 2000), when a plaintiff seeks declaratory or injunctive relief, he seeks to regulate ongoing or future conduct by alleging a future injury, *McCallum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1145 (11th Cir. 2014). As such, "there is an additional element to the injury in fact requirement when a plaintiff seeks injunctive relief," *Duty Free Ams., Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1271 (11th Cir. 2015), in that a plaintiff has standing only if he "alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of ***future*** injury," *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (emphasis in original) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). There must also appear to be "a substantial likelihood that he will suffer" such a future injury. *Strickland v. Alexander*, 772 F.3d 876, 883 (11th Cir. 2014) (quoting *Malowney v. Fed.*

*Collection Deposit Grp.*, 193 F.3d 1342, 1346 (11th Cir. 1999)). "[A] court cannot grant declaratory relief when there is no 'immediate and definite governmental action or policy that has adversely affected and continues to affect a present interest.'" *Carver Middle Sch. Gay–Straight All. v. Sch. Bd.*, 842 F.3d 1324, 1330 (11th Cir. 2016) (quoting *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 125-26 (1974)).

Khan has not alleged a substantial likelihood of future injury. He argues that his interest in U.S. citizenship has been adversely affected by the application of CARRP to his naturalization application, *see* Pl.'s Opp'n at 10 ("Here, Plaintiff suffers from clear continuing harm in the form of deprivation of U.S. citizenship."), but in actuality each of his constitutional and statutory claims is grounded in the alleged procedural deficiencies in USCIS's review of his application—a review that has already come to an end. "[A] prospective remedy will provide no relief for any injury that is, and likely will remain, entirely in the past." *Church*, 30 F.3d at 1337 (quoting *Am. Postal Workers Union v. Frank*, 968 F.2d 1373, 1376 (1st Cir. 1992)). The Amended Complaint contains no allegations that there exists a real and immediate threat that Khan's application would be before USCIS again and that USCIS would again apply these purportedly unlawful procedures to his application. On the contrary, the Amended Complaint contains only allegations that USCIS ***did*** apply these procedures to his application, which resulted in the unlawful denial of his application. *See Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1285 (11th Cir. 2001) ("[T]he fact that others may be exposed to [an unlawful] process in the future is not sufficient for [a plaintiff] to obtain prospective relief that will not benefit ***him*** in conjunction with his individual claim."). Even had Khan alleged that USCIS would apply CARRP to him again, that allegation would amount to nothing more than the allegation of a hypothetical injury, which is insufficient to confer standing for declaratory relief.

Moreover, because Khan's application is properly before this Court for a *de novo* determi-

nation, he "has no present interest, other than vindication, in a declaratory judgment" on his claims arising from USCIS's application of CARRP as to him. *Carver Middle School Gay–Straight Alliance*, 842 F.3d at 1330. Under 8 U.S.C. § 1421(c), a person whose application for naturalization is denied "may seek review of such denial before the United States district court for the district in which such person resides." 8 U.S.C. § 1421(c). The district court must conduct a *de novo* review, "and the court shall make its own findings of fact and conclusions of law." *Id.* This statutorily prescribed "judicial review of naturalization denials 'is not limited to any administrative record but rather may be on facts established in and found by the district court *de novo*.'" *Saliba v. Att'y Gen.*, 828 F.3d 182, 189 (3d Cir. 2016) (quoting *Aparicio v. Blakeway*, 302 F.3d 437, 445 (5th Cir. 2002)). "Th[e] grant of authority is unusual in its scope," *Nagahi v. INS*, 219 F.3d 1166, 1169 (10th Cir. 2000), as it stands "in stark contrast to the appeal process for orders of deportation and petitions for asylum, in which federal courts accord the Attorney General great deference," *O'Sullivan v. U.S. Citizenship & Immigration Servs.*, 453 F.3d 809, 811 (7th Cir. 2006). In other words, "[e]ven if the [agency] is allowed to make the initial decision on a naturalization application, the district court has the final word and does not defer to any of the [agency's] findings or conclusions." *United States v. Hovsepian*, 359 F.3d 1144, 1162 (9th Cir. 2004). Not only that, but this Court also does not defer to any of the agency's ***procedures*** in making that *de novo* determination—including the alleged application of CARRP. This Court will make its own findings of fact and conclusions of law, separate and apart from USCIS's determination or any procedures it may have utilized in making that determination—and with no deference to its determination or its procedures.

The Court therefore concludes that Khan has failed to allege an injury sufficient to confer standing.[2] Accordingly, his claims seeking declaratory and injunctive relief must be dismissed.[3]

---

[2]   Even assuming Khan had alleged the requisite likelihood of a real and immediate injury, and that the injury was fairly traceable to the actions of USCIS, he has also failed to sufficiently allege redressability. To establish redress-

## IV.      CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that the Defendants' Motion to Dismiss In Part [ECF No. 21] is **GRANTED**. Counts II, III, IV, V, VI, and VII of the Amended Complaint [ECF No. 20] are **DISMISSED WITHOUT PREJUDICE**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 22nd day of February, 2017.

DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

ability for purposes of constitutional standing, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (citation omitted). In his opposition brief, Khan concedes that he "does not seek a broad injunction prohibiting the application of CARRP generally to all natural-ization petitions." Pl.'s Opp'n at 10 n.3. Instead, he seeks an order that the matter be returned to USCIS for re-adjudication without CARRP being applied to **his** application." *Id.* But the relief Khan seeks is not relief to which he is entitled, nor is it a scenario that would even plausibly come to pass. In an action conducted under to 8 U.S.C. § 1447(b), for example, which applies in the event USCIS fails to make a determination on a naturalization applica-tion 120 days after the naturalization examination is conducted, a district court "may either determine the matter or remand the matter, with appropriate instructions, to [USCIS] to determine the matter." 8 U.S.C. § 1447(b). The procedure under 8 U.S.C. § 1421(c) does not similarly provide for remand with instructions. This Court's *de novo* review will result in one of two outcomes: either the Court will conclude that Khan meets the statutory requirements for naturalization or it will conclude that he does not. In that respect, Khan stands in no different shoes than does any naturalization applicant who petitions a district court for *de novo* review of his or her application. A favorable decision under the Section 1421(c) procedure (that Khan is entitled to naturalization) would not address the alleged procedural issues attendant to USCIS's determination that Khan is not eligible for naturalization; indeed, it would not need to because it would completely obviate those procedural issues.

[3]      Because the Court concludes that Khan does not have standing to bring Counts II through VII, it need not address the Defendants' Rule 12(b)(6) arguments.