UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 15-cv-23406-GAYLES

**IKRAM UL HAQ KHAN,**

      **Plaintiff,**

v.

**UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, et al.,**

      **Defendants.**
_____/

## ORDER

**THIS CAUSE** comes before the Court on Plaintiff Ikram Ul Haq Khan's Petition for a *De Novo* Naturalization Hearing Pursuant to 8 U.S.C. § 1421(c).

On October 15, 2018, the Court began a six-day bench trial. The Court reviewed hundreds of documents, read several deposition transcripts, and heard live testimony from nine witnesses. When the testimonial evidence conflicted, the Court, as fact-finder, made credibility determinations. Based on the evidence presented and as set forth in the following findings of fact and conclusions of law, the Court holds that Plaintiff's Petition must be denied.

**I.    FINDINGS OF FACT**

Plaintiff Ikram Ul Haq Khan ("Plaintiff") was born in 1970 and was raised in the town of Galoch, located in the Swat district in Pakistan. Plaintiff's father came to the United States in 1994, and naturalized on January 25, 2000. On June 26, 2001, Plaintiff was admitted to the United States on an immigrant visa as the unmarried son of a United States citizen.

Plaintiff is married to Sofia Khan ("Sofia").[1] Sofia was born in Pakistan in March of 1980. On March 31, 1996, Sofia's father filed an immigrant visa application, identifying his wife and all seven of his children—including Sofia—as derivatives who would accompany him to the United States. The application was granted, and on October 27, 1996, Sofia's father and eldest brother, Imdad Ullah Khan, immigrated to the United States. Sofia's mother (Mahar Bibi Khan), Sofia, and the rest of Sofia's siblings remained in Pakistan. Approximately three years later, on July 20, 1999, Sofia's mother filed her own immigrant visa application, listing only five of her six children still living in Pakistan as unmarried child derivatives who would accompany her to the United States. The application did not include Sofia.

In 1999, before Sofia's mother and siblings immigrated to the United States, Plaintiff and Sofia were married in a religious wedding ceremony—a nikah—in Pakistan.[2] Sofia's mother, five of her siblings, and her uncle, Ghulam Rashid, all attended the nikah. Sofia's father and eldest brother did not attend because they were already in the United States.

On June 26, 2001, after Plaintiff and Sofia married, Plaintiff immigrated to the United States. While in the United States, Plaintiff lived primarily in his father's home in Miami, Florida.[3] Plaintiff's father financially supported Plaintiff when needed. Plaintiff did not own or rent any properties. Plaintiff's employment was sporadic, in part due to his frequent travel to Pakistan.

---

[1] Plaintiff's father, Hafiz Obaidullah Khan, and Sofia's father, Hafiz Sher Ali Khan, are brothers.
[2] At the trial, Plaintiff noted Sofia's mother's failing memory and some inconsistencies in Imdad Ullah Khan's testimony when compared to his interview testimony. The Court has weighed the evidence and the credibility of the witnesses and finds the testimony that Sofia and Plaintiff were married before Plaintiff arrived in the United States to be credible and consistent with the other evidence presented. While Plaintiff and Sofia's marriage certificate—the nikah nama—was filed in a local Pakistani government office on March 11, 2002, and reflects a wedding date of November 3, 2001, the Court does not find it to be reliable evidence of when Plaintiff and Sofia were married. Defendant's expert, Jason Dyer, a foreign services officer with the U.S. Department of State who was previously stationed in Pakistan, testified that it is not uncommon for nikah namas to contain fraudulent information, including inaccurate dates, and that fraudulent nikah namas were frequently used to obtain immigration benefits. The Court finds this testimony credible and consistent with the other evidence.
[3] Plaintiff also lived in Wisconsin and Pennsylvania for short periods of time.

Plaintiff traveled regularly to Pakistan to see Sofia and their expanding family. Plaintiff would stay in his family's home in Pakistan for several months at a time, typically just shy of 180 days, and would help manage his father's madrassa, an Islamic religious school. By 2007, Plaintiff and Sofia had seven children.

On June 19, 2006, Plaintiff filed his Application for Naturalization (the "Naturalization Application") with United States Citizenship and Immigration Services ("USCIS"). On April 30, 2010, Sofia, seeking to join her husband and family in the United States, filed an immigrant visa application which listed their seven children as derivatives. In the application, Sofia represented that her two eldest daughters, H_d_ and H_f_, were born in September 2002—making them nine years old at that time.[4] Sofia also submitted photographs of H_d_ and H_f_ to the U.S. Department of State.[5] Despite their purported September 2002 birthdates, the girls each look at least fourteen years old in the photographs and one looks significantly older than her twin sister.

On May 12, 2011, while Plaintiff's Naturalization Application was pending, Plaintiff's father was indicted in the United States District Court for the Southern District of Florida for conspiracy to provide material support to terrorists in Pakistan. *See United States v. Hafiz Khan*, 11-CR-20331-Scola (S.D. Fla.). He was later convicted. The government also brought terrorism charges against Plaintiff's two brothers, but all charges were eventually dismissed. Plaintiff was not charged with any crimes.

USCIS's processing of Plaintiff's Naturalization Application stalled while Plaintiff's father's criminal case was pending. In response, Plaintiff filed a mandamus action in this Court. *See Ikram Ul Khan v. USCIS*, Case No. 13-CV-21351-Altonaga (S.D. Fla.). Shortly thereafter,

---

[4] The birth certificates for H_d_ and H_f_, purportedly twins, reflect a birth date of September 17, 2002. It is undisputed that as of October 28, 2017, both girls were already married.

[5] Plaintiff testified at trial that the photographs were indeed photographs of H_d_ and H_f_. Plaintiff sought to exclude the photographs as Defendants did not timely produce them. While the Court found that Defendants untimely produced the photographs, there was no prejudice to Plaintiff.

USCIS moved forward with processing Plaintiff's Naturalization Application and interviewed Plaintiff on July 18, 2013, and October 24, 2013. During his interviews with immigration officer Ahmed Ztaoui, Plaintiff answered questions about, among other things, his trip to Pakistan from July 2007 to January 2008, a time period of increased terrorist attacks in Swat, Pakistan. Plaintiff asserted that he was not involved in the unlawful activity in Swat because he and his family were living in Swabi, Pakistan at that time. Plaintiff was also questioned about the birthplace of his daughter R__, who was born in July 2007. In his interviews, Plaintiff gave conflicting accounts as to whether R_ was born in Swat or Swabi.[6]

On November 26, 2013, USCIS denied Plaintiff's application for naturalization on three grounds: (1) failure to establish continuous residence in the United States; (2) failure to establish good moral character based on reports that Plaintiff was involved in terrorist activities in Pakistan; and (3) failure to establish good moral character based on Plaintiff providing false testimony during his naturalization interviews with the intent to obtain an immigration benefit. Specifically, USCIS found that Plaintiff misrepresented the birthplace of his youngest child, R__, in an attempt to distance himself from terrorist activity in the Swat district in Pakistan. Plaintiff administratively appealed the denial of his application. On September 25, 2014, USCIS interviewed Plaintiff in connection with his appeal. On May 13, 2015, USCIS reaffirmed its decision to deny Plaintiff's naturalization application

On February 8, 2016, Plaintiff filed his First Amended Complaint for Declaratory and Injunctive Relief and Petition for a *De Novo* Naturalization Hearing Pursuant to 8 U.S.C. § 1421(c).[7]

---

[6] Natalie Diaz, an immigration officer with USCIS's fraud detection unit, investigated Plaintiff and Sofia's family in Orlando, Florida. The Court finds both Ms. Diaz and Mr. Ztaoui to be credible.

[7] In his claims for declaratory and injunctive relief, Plaintiff challenged USCIS's processing and denial of his naturalization application under the Controlled Application Review and Resolution Program ("CARRP"). The Court dismissed those claims on February 22, 2017. [ECF No. 60].

After discovery, the Court denied the parties' cross motions for summary judgment, and on October 15, 2018, the Court began the six-day trial.

## II.    CONCLUSIONS OF LAW

An applicant for naturalization may seek *de novo* judicial review of the denial of a naturalization application.  8 U.S.C. § 1421(c). In such a proceeding, the district court "shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application." *Id.*   This statutorily prescribed "judicial review of naturalization denials 'is not limited to any administrative record but rather may be on facts established in and found by the district court *de novo*.'" *Saliba v. Att'y Gen.*, 828 F.3d 182, 189 (3d Cir. 2016) (quoting *Aparicio v. Blakeway*, 302 F.3d 437, 445 (5th Cir. 2002)).

"To be eligible for citizenship, an applicant must demonstrate that [he]: (1) was lawfully admitted to the United States as a permanent resident; (2) has resided continuously, and has been physically present, in the United States for the required statutory period; and (3) is a person of good moral character and has been for at least the five years preceding the filing of his naturalization application."  *Adesuwa v. United States Citizenship & Immigration Services*, No. 07-20524-CIV, 2007 WL 9709738, at *2 (S.D. Fla. Aug. 29, 2007) (citing 8 U.S.C. §§ 1427, 1429; 8 C.F.R. § 316.2). "[T]here must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." *Fedorenko v. United States*, 449 U.S. 490, 506 (1981).  An applicant seeking the privilege of United States citizenship bears the burden to show, by a preponderance of the evidence, "his eligibility for citizenship in every respect," and any doubts are resolved "in favor of the United States. . ."  *Berenyi v. District Dir., INS.*, 385 U.S. 630, 637 (1967).

At issue in this action is whether Plaintiff (1) was lawfully admitted as a permanent resident; (2) resided continuously in the United States after being admitted as a lawful permanent resident; and (3) has been a person of good moral character during the relevant time period.

### A. Plaintiff was not lawfully admitted as a permanent resident

An applicant for naturalization is required to establish that he was lawfully admitted to the United States for permanent residence. *See* 8 U.S.C. § 1429 ("[N]o person shall be naturalized unless he has been lawfully admitted to the United States for permanent residence in accordance with all applicable provisions of this chapter."). "The term 'lawfully admitted for permanent residence' means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws. . . ." 8 U.S.C. § 1101(a)(20). This is a substantive, as opposed to procedural, requirement. *See Kyong Ho Shin v. Holder*, 607 F.3d 1213, 1217 (9th Cir. 2010). As a result, if an alien failed to comply "with the relevant substantive legal requirements at the time [he] was admitted for permanent residence, then [he] was never 'lawfully admitted for permanent residence.'" *Villafana v. Holder*, 358 F. App'x 245, 246 (2d Cir. 2009). It does not matter whether the alien acquired his status of permanent resident via fraud and misrepresentations or through mistake—if it was not lawful, he is not entitled to be naturalized. *See United States v. Coronell,* No. 11-22533, 2013 WL 12077445, *4 (S.D. Fla. Apr. 26, 2013) (citing *Alhuay v. U.S. Atty. Gen.*, 661 F.3d 534, 547-48 (11th Cir. 2011) and *Savoury v. U.S. Atty. Gen.*, 449 F.3d 1307, 1313 (11th Cir. 2006)) ("If the status of 'permanent resident' was acquired via fraudulent means, the permanent residency is not 'lawful,' and therefore, the holder cannot have been 'lawfully accorded the privilege of residing permanently in the United States.'"); *Villafana v. Holder,* 358 F. App'x 245, 246 (2d Cir. 2009) ("[E]ven for those who obtained their [lawful permanent resident] status by mistake rather than fraud, if petitioner fails to demonstrate that he or she had complied with the relevant substantive legal requirements at the time petitioner was admitted for permanent residence, then petitioner was never 'lawfully admitted for permanent residence'"); *Hernani v. U.S. Atty. Gen.*, 366 F. App'x 1, 3 (11th Cir.

6

2010) ("An alien was not 'lawfully' admitted for permanent resident status if, at the time such status was accorded, he or she was not entitled to it.").

The Court finds that Plaintiff was not lawfully admitted to the United States for permanent residence.  On June 26, 2001, Plaintiff was admitted to the United States on an immigrant visa as the unmarried son of a United States citizen.  However, the evidence presented at trial clearly established that Plaintiff was already married to Sofia by 2001.  Sofia's mother, father, two of her siblings, her uncle, and Plaintiff's friend, Norrul Wahab all testified, at trial and through deposition testimony, that Plaintiff was married sometime before the year 2000.  This explains why Sofia's family immigrated to the United States without her.  Clearly, something happened in the intervening three years between her father and mother's visa applications such that Sofia could no longer travel to the United States as an unmarried child derivative. This intervening change was logically Sofia's marriage to Plaintiff.  As a married woman, Sofia was longer eligible to enter the United States under her parents' applications.  Indeed, the photos of Plaintiff's eldest daughters, clearly older than their birth certificates indicate, support a finding that Sofia was, at the very least, pregnant when her family immigrated to the United States.[8]

Piecing together the evidence, a clear story emerges.  Plaintiff and Sofia were married before Sofia's mother filed her application for immigrant visa in 1999.  It is likely that Sofia and Plaintiff already had a child and/or that Sofia was pregnant.  Sofia could not travel to the United States either pregnant or with a child as this would certainly raise questions about her marital status.  Therefore, Sofia's mother did not include Sofia on her application as an unmarried child

---

[8] Plaintiff produced little evidence, beyond his own testimony and the less than reliable birth certificates, to establish his eldest daughters' ages. Plaintiff did not produce any of his children's school records, testifying that the records were destroyed during a prior Taliban insurgency that lasted from 2007-2009. However, the Taliban's destruction of buildings and records would not have prevented Plaintiff from obtaining school records for his daughters after 2009.

7

derivative applicant. Indeed, the idea espoused by Plaintiff—that Sofia chose to stay behind in Pakistan, alone and without her family, while her fiancé, parents, and siblings all embarked on new lives in the United States—simply makes no sense. Accordingly, the Court finds that Plaintiff and Sofia were married before June 2001, and that Plaintiff misrepresented his status as the unmarried son of a United States citizen when he was admitted to the United States.

As a result, Plaintiff was never lawfully admitted for permanent residence status and is, therefore, ineligible to naturalize.[9]

### B. Continuous Residence

Even if Plaintiff had been properly admitted into the United States as a lawful permanent resident, the Court finds that he has failed to prove continuous residence. Applicants for naturalization are required to reside continuously in the United States for at least five years after being lawfully admitted for permanent residence and, during the five years immediately preceding the date the naturalization application is filed, be physically present in the United States for at least half of that time. 8 U.S.C. § 1427(a). In addition, an applicant must reside continuously in the United States from the date of the application up to the time of admission of citizenship. *Id*. While an applicant is permitted to be absent from the United States during the five-year period, he cannot be absent from the United States for more than six months without having to prove that he did not abandon his residence. 8 U.S.C. § 1427(b). "The term 'residence' means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." 8 U.S.C. § 1101(33); *see also* 8 C.F.R. § 316.5(a).

---

[9] Plaintiff argues that Defendants conceded that Plaintiff lawfully entered the United States as the unmarried son of a United States Citizen in their pleadings. The Court disagrees. It is not reasonable to find that Defendants' procedural/historical description of how Plaintiff entered the United States constitutes an admission to the very thing Defendants challenge.

8

The Court finds that Plaintiff failed to establish continuous residence in the United States from the time he entered the country until the last time he exited, because he maintained his primary place of residence in Swat, Pakistan. While Plaintiff made sure to technically comply with the statute, returning to the United States from Pakistan on multiple occasions before the six-month presumptive time limit was triggered, he never fully established a residence in the United States. Plaintiff did not own or rent property in the United States. Rather, when in the United States, Plaintiff lived primarily in his parents' home in Miami. *See Usmani v. Atty Gen.*, 341 F. App'x 473, 475 (11th Cir. 1999) (residency claim undercut because petitioners "(1) did not enroll their children at school; (2) emptied their bank account; and (3) never owned property."). Plaintiff's employment in the United States was, at best, sporadic. He worked only 22 out of 100 months from June 2001 through September 2009. During this time, he never held a job in the United States for more than four to five months. In addition, Plaintiff's failure to file tax returns for four years and limited banking activity for the first few years he was in the United States are indicators that the United States was not Plaintiff's primary residence. Rather, the evidence supports a finding that Plaintiff's primary residence was in Pakistan, with his wife and ever-growing family. Plaintiff's only regular employment during the relevant time period was at his father's madrassa in Pakistan. Indeed, from October 2001 through February 2007, Plaintiff spent more time living with his wife and children in his home in Pakistan than he spent at any address in the United States. Accordingly, the Court finds that Plaintiff has not met his burden of establishing continuous residence in the United States.

Plaintiff argues that the Court should not consider Plaintiff's frequent trips to Pakistan because they never exceeded six-months. However, the presumptions regarding breaking continuous residence at 8 C.F.R. § 316.5(c)(1) are applicable only if an applicant can first establish residence under 8 U.S.C. § 1427(a). Plaintiff has failed to show that he ever established residence in the

United States for at least five years after having been admitted into the United States. Moreover, even if Plaintiff had initially established residence in the United States, the Court may still consider his regular and frequent trips to Pakistan in determining whether there was a break in residency. *See Sharma v. U.S. Dep't of Homeland Sec.*, No. CV H-08-1197, 2009 WL 10697616, at *3 (S.D. Tex. Sept. 11, 2009) ("While 8 U.S.C. § 1427 assumes a break in continuity of residence in specific scenarios (e.g. absences longer than six months), it does not preclude a finding of a break in residency absent those circumstances."). The regulations interpreting § 1427(b) provide that an applicant can show maintenance of residency during an absence if "(A) [he] did not terminate his ... employment in the United States; (B) [his] immediate family remained in the United States; (C) [he] retained full access to his ... United States abode; or (D) [he] did not obtain employment while abroad." 8 C.F.R. § 316.5(c)(1)(i). Plaintiff terminated his employment—when he had a job— every time he left the United States. In addition, Plaintiff's immediate family, consisting of Sofia and their seven children, reside in Pakistan. Finally, Plaintiff regularly worked at his father's madrassa in Pakistan.[10] Accordingly, the Court finds that Plaintiff did not maintain a continuous residence in the United States for the requisite time period and that, therefore, his Petition must be denied.

### C.     Moral Character

Defendants also argue that Plaintiff is ineligible for naturalization because he was not a person of good moral character. Specifically, Defendants assert Plaintiff was involved with the Taliban in Pakistan and that Plaintiff lied during his interviews about the birthplace of R_. While the Court finds that Plaintiff misrepresented his marital status when he entered the United States, there is insufficient evidence for the Court to find that Plaintiff was in the Taliban or that he lied

---

[10] Even if he did not receive a formal salary for his work at the madrassa, the evidence reveals that Plaintiff was supported by his father.

about the birthplace of his youngest child.  The government has never indicted Plaintiff with terrorism crimes.  Although the Defendants attempted to link Plaintiff to terrorist activity in Swat, Pakistan in 2007, around the birth of R_, the evidence presented at trial failed to establish that Plaintiff has ever been a member of the Pakistani Taliban or that Plaintiff participated, planned, coordinated, or assisted any attack in Pakistan.  Further, the evidence presented is insufficient to conclude that Plaintiff lied about R_'s birthplace.  Plaintiff was interviewed over many hours and during a time when he was fasting.  Under these circumstances, it is reasonable to see how Plaintiff might have confused the details of one of his seven children's births.

### III. CONCLUSION

Based on the foregoing it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff has not proven, by a preponderance of the evidence, that he is eligible in every respect to become a United States citizen under 8 U.S.C. §§ 1427, 1429.

2. The Court will enter a separate final judgment in favor of Defendants.

3. This case shall be **CLOSED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 25th day of March, 2019.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE